## THE DAISY DAY.

### MARINE INS. CO. *v.* THE DAISY DAY.

*(Circuit Court, W. D. Michigan, S. D.* September 23, 1889.)

1. MARITIME LIENS—INSURANCE PREMIUMS.
   Admiralty law gives no maritime lien on a vessel for unpaid premiums on insurance thereon.
2. SAME.
   Though a state law confers a lien on a vessel for unpaid premiums on insurance thereon, such lien is subordinate to maritime liens for supplies and repairs, and for damages from negligent towage.

In Admiralty. Application for distribution of proceeds. On appeal from district court, *ante,* 538.

*M. C. & A. A. Krause,* for original libelants.

*Fletcher & Wanty,* for Marine Insurance Company.

*Peter Doran,* for other intervenors.

JACKSON, J. The decree of the district court, directing the distribution of the proceeds arising from the sale of the propeller Daisy Day, is only appealed from by the intervening libelant, the Marine Insurance Company. The decree below ordered the fund to be distributed as follows, viz.: *First,* in payment of seamen's wages, with costs; *second,* in payment of damages awarded G. F. Gunderson for injuries sustained by his schooner G. Barber from negligent towage by the Daisy Day, with costs; *third,* in payment of claims for supplies and repairs, (foreign and domestic claims of this class being placed upon the same footing, under the authority of *The General Burnside,* 3 Fed. Rep. 228, and *The Guiding Star,* 18 Fed. Rep. 263-269,) with costs; and, *lastly,* in payment of the Marine Insurance Company's claim for unpaid premiums on insurance upon said propeller Daisy Day, said insurance having been taken out by and for the benefit of the owners of said propeller. The fund will be almost, if not altogether, exhausted before reaching the claim of the Marine Insurance Company, which alone appeals from said order of distribution. This appeal of the insurance company does not bring up or make it necessary to consider the correctness of the order of distribution as between the seamen and Gunderson and the material-men. Those parties all acquiesce in the decree. But the Marine Insurance Company complains of the position assigned it in the distribution. It contends that its debt for unpaid premiums should rank and be paid equally with the claims for supplies and repairs, and should have priority or precedence over the claim of said Gunderson for damages sustained by him from negligent towage of his schooner G. Barber by the Daisy Day. In support of these claims on behalf of the insurance company it is urged— *First,* that by the general admiralty law of the United States, said insurance company had a maritime lien on the Daisy Day for unpaid premiums on the policy of marine insurance, which the owners of said pro-

peller procured from libelant; and, *second*, that, if no such maritime lien existed by the general admiralty law, the statutes of Michigan confer such a lien, and the contract of insurance being maritime in its character, and being supplemented by the lien conferred by state law, this court should place the claim of the insurance company upon an equal footing with material-men, presenting claims for supplies and repairs, and should give it priority over the claim of Gunderson for damages resulting from negligent towage.

The first position is supported by the case of *The Dolphin*, 1 Flip. 580, but the weight of authority and of reason is against the correctness of that decision, and this court, in the fall of 1888, at Detroit, declined to follow the ruling announced in *The Dolphin*, and held in conformity with the decision in *Re Insurance Co.*, 22 Fed. Rep. 109, and other cases holding the same doctrine, that no maritime lien existed by the admiralty law for unpaid premiums of insurance. This court adheres to this view of the law.

As to the second position, while it is true that the admiralty court will enforce the lien given by the state law for unpaid premiums, as was done in the case of *The Guiding Star*, 18 Fed. Rep. 264, still it does not follow, nor was the question either made or decided in *The Guiding Star*, that claims under insurance contracts or for unpaid premiums should rank and be placed upon the same footing as strictly maritime claims and liens in the distribution of funds insufficient for the payment of all claims When we consider that insurance is effected for the personal indemnity of the owner or owners, and in no way aids the vessel or promotes its security, or the better prepares it for undertaking and conducting the business of commerce, and then reflect that the supplies and repairs which material-men furnish are directly for the benefit of the vessel itself, and enable it the better to perform the duties and responsibilities of navigation and carrying, we think it is perfectly just and proper to postpone the claim for unpaid premiums to those for supplies and repairs. In the case of *Insurance Co.* v. *Proceeds*, 24 Fed. Rep. 560, Judge WALLACE has well expressed the true character of such insurance claims, and their relative value to maritime claims. We concur in the distinction he there draws between the two classes of claims. The claim of Gunderson was clearly maritime. It is not material to determine whether his claim for damages be considered as arising out of a maritime tort, or for a breach of contract implied from the undertaking of the Daisy Day to tow his schooner carefully and without negligence. Whether a tort or a breach of contract, the negligent towage causing injury to his schooner gave him a valid maritime lien for damages, which under the authorities entitles him to priority of payment over the Marine Insurance Company.

In the judgment of this court there is no error in the decree of the district court of which the Marine Insurance Company can properly complain, and the same is accordingly affirmed, as against said insurance company, with costs of the appeal.